**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD, BUZZFEED, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 19-cv-957 (RBW) ) |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION AND DEFENDANTS' MOTION TO VACATE HEARING**

On March 29, 2019, the Attorney General informed Congress and the public that he anticipates that the report issued by Special Counsel Robert S. Mueller, III to the Attorney General pursuant to 28 C.F.R. § 600.8 (the "Mueller Report") will be released "by mid-April, if not sooner." Ex. 1 (letter from the Attorney General (Mar. 29, 2019)). Less than a week later, Plaintiffs, Jason Leopold and Buzzfeed, Inc., filed a motion for a preliminary injunction, seeking an order compelling Defendant, the Department of Justice (the "Department" or "DOJ"), to "process Plaintiffs' FOIA request for the Mueller Report and produce all non-exempt portions of the Report by April 18, 2019." Pls.' Mot. 1, Dkt. 5.

Plaintiffs' motion should be denied. The Court recently denied a nearly identical request for a preliminary injunction for the release of the Mueller Report by a date certain, finding that the plaintiff, the Electronic Privacy Information Center ("EPIC"), failed to establish irreparable harm.[1] *See* Order, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 9, 2019), Dkt.

---

[1] Because Plaintiffs make the same arguments as the plaintiff in *Electronic Privacy Information Center v. Department of Justice*, Defendants incorporate by reference their opposition brief and supporting declaration from that case. *See* Def.'s Opp., Decl., *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 5, 2019), Dkt. 19, 19-1.

1

24.  Plaintiffs allege the same harm as EPIC.  *Compare* Pls.' Mot. 3–4, *with* Pl.'s Mem. 25–30, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 9, 2019), Dkt. 7-1, *and* Pl.'s Reply 10–14, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 8, 2019), Dkt. 21.  And like EPIC, Plaintiffs cannot establish irreparable harm, particularly in light of the Attorney General's anticipated mid-April release date, *see* Ex. 1, and his recent testimony that the report will be "color code[d]" with "explanatory notes describing the basis for each redaction,"[2] thus providing virtually all the relief Plaintiffs would receive under the FOIA. Therefore, the Court should likewise deny Plaintiffs' motion for failure to establish irreparable harm.  In addition, because Plaintiffs allege the same harm as EPIC—which the Court already found insufficient to establish entitlement to a preliminary injunction—Defendants respectfully request that the Court deny Plaintiffs' motion on the papers and vacate the hearing set for April 16.[3]

Accordingly, the Court should deny Plaintiffs' motion on the papers for failure to establish irreparable harm, consolidate this case with *Electronic Information Privacy Center v. Department of Justice*, No. 19-810, and order Plaintiffs to appear at the same status conference with EPIC on May 2, 2019, "to discuss how the parties wish to proceed in this case."  Order, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 9, 2019), Dkt. 24.

### BACKGROUND

On March 21, 2019, Plaintiff Jason Leopold submitted a FOIA request to the Department of Justice.  *See* Compl. Ex. A, Dkt. 1-1 (FOIA request).  In that request, Mr. Leopold sought what

---

[2] *See* Testimony of Attorney General William Barr (Apr. 9, 2019), *available at* https://www.c-span.org/video/?459560-1/attorney-general-barr-expects-release-mueller-report-week&live=&start=1378 (last visited Apr. 12, 2019).

[3] Pursuant to Local Rule 7(m), on April 12, 2019, undersigned counsel conferred with counsel for Plaintiffs, who stated that Plaintiffs oppose Defendants' motion to vacate the hearing.

2

is now referred to as the Mueller Report—which did not exist at the time.[4] *See id.*; *see also* Ex. 2 (letter from the Attorney General (Mar. 22, 2019)). Specifically, the request sought the following:

> A copy of the FINAL REPORT prepared by the Office of Special Counsel Robert Mueller relating to the Office's investigation into: any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a).

Compl. Ex. A, Dkt. 1-1 (FOIA request). Mr. Leopold also requested expedited processing of his FOIA request. *Id.* at 2.

On March 29, 2019, the Department of Justice's Office of Information Policy ("OIP") acknowledged receipt of Mr. Leopold's FOIA request. Compl., Ex. B at 1 (letter from the Department of Justice to Mr. Leopold (Mar. 29, 2019)). In that letter, OIP granted Mr. Leopold's request for expedited processing, noting that OIP is "currently processing other requests seeking records similar to those [Mr. Leopold has] requested, which have already been granted expedited processing." *Id.* OIP also stated that the FOIA request fell within "unusual circumstances" because the records that Mr. Leopold sought required searches in and/or in consultation with other offices and/or the request involves a voluminous amount of material. *Id.* (quoting 5 U.S.C. § 552(a)(6)(B)(i)–(iii)). Accordingly, OIP informed Mr. Leopold that the request had been placed in the complex processing track and that OIP would "need to extend the time limit to respond to [his] request beyond the ten additional days provided by the statute." Compl., Ex. B at 1.

---

[4] It was not until March 22, 2019, that the Attorney General informed Congress that the Special Counsel "has concluded his investigation of Russian interference in the 2016 election and related matters" and had "submitted to me today a 'confidential report explaining the prosecution or declination decisions' he has reached, as required by 28 C.F.R. § 600.8(c)." Ex. 2.

## ARGUMENT

### I. Standard of Review

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Green*, 553 U.S. 674, 689 (2008). It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). A party moving for a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). When, as here, a movant seeks mandatory injunctive relief, *i.e.*, an injunction that "would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Info. Privacy Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

### II. Plaintiffs Have Failed to Meet Their Heavy Burden to Show Entitlement to Emergency, Mandatory Relief

#### A. Plaintiffs Have Failed to Establish that They Will Suffer Irreparable Harm

The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (internal quotation marks and citation omitted). Plaintiffs fail to meet this high standard, just as this Court found in denying EPIC the same requested emergency relief.

Plaintiffs argue that "[b]ecause 'timely public awareness' is a 'structural necessity in a real democracy,' there can be no dispute that Plaintiffs and the public will suffer irreparable harm."

Pls.' Mot. 3–4 (quoting *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 40–41 (D.D.C. 2006)). But the Court recently rejected a nearly identical argument in *EPIC*. In that case, EPIC argued that it would suffer irreparable harm by not immediately getting records that are "at the center of a critical national debate" because "stale information is of little value." Pl.'s Mem. 25, Pl.'s Reply 10, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 8, 2019), Dkt. 7-1, 21. The Court disagreed, finding that EPIC "has not satisfied its burden of demonstrating that it faces irreparable harm in the absence of an injunction." Order, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 9, 2019), Dkt. 24; *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 46–47 (D.D.C. 2014) (stating that it is "clear from case law that a movant's general interest in being able to engage in an ongoing public debate using information that it has requested under FOIA is not sufficient to establish that irreparable harm will occur unless the movant receives immediate access to that information").

There is no reason to reach a different result in this case. That is especially true given the Attorney General's statement that he anticipates release of the report by mid-April, *see* Ex. 1, and his recent testimony that the report will be color coded with explanatory notes describing the basis for each redaction, *see supra* n.2. A redacted report identifying the basis for the redactions is essentially what Plaintiffs would receive under the FOIA. *See Elec. Info. Privacy Ctr.*, 15 F. Supp. 3d at 45 ("[I]t is hard to conceive of any irreparable harm that EPIC will suffer from this relatively short period of additional delay."); *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 13 (D.D.C. 2015) (finding no irreparable harm when plaintiff's requested injunction would compel production of the sought-after materials, at most, only marginally sooner than the agency has indicated it intends to complete its processing of the plaintiff's request without such compulsion"). Even if the FOIA processing of the report resulted in less information being redacted than the Attorney

General's processing—a result that is unlikely given the Attorney General's commitment to as much transparency as consistent with law, *see, e.g.*, Ex. 1, Ex. 2—Plaintiffs cannot plausibly allege to be irreparably harmed in getting virtually the same document they would get under FOIA in within the time frame promised by the Attorney General.

Plaintiffs have failed to meet their heavy burden of showing of irreparable harm, and for this reason alone their motion for emergency injunctive relief should be denied. *See* Order, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 9, 2019), Dkt. 24.

### B. Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits

Plaintiffs argue that they are likely to succeed on the merits because the Department is not processing their request "as soon as practicable." Pls.' Mot. 2. Plaintiffs incorrectly contend that "there is a rebuttable presumption that it must be processed within the statute's default 20-business-day deadline," and that the Department has failed to show that disclosure within this time period is not practicable. *Id.* at 2–3. Even if Plaintiffs were correct, however, their argument fails for multiple reasons.

First, the 20-working day time period—to which even Plaintiffs claim the government is entitled—has not yet even run. Mr. Leopold filed his FOIA request on March 21, Compl. Ex. A, even though the Mueller Report did not yet exist, *see* Ex. 2. Twenty working days from March 21 is April 18. And the Office of Information Policy found that Mr. Leopold's "request falls within 'unusual circumstances,'" under 5 U.S.C. § 552(a)(6)(B)(i), which permits an agency to extend the time to issue a determination on the request by ten additional working days.[5] *See* Compl. Ex.

---

[5] Plaintiffs suggest that the reasons set forth by OIP for invoking the statutory extension are insufficient to constitute "unusual circumstances." Pls.' Mot. 3. But OIP determined that the records that Mr. Leopold sought required searches in and/or in consultation with other offices and/or the request involves a voluminous amount of material. Compl. Ex. B. In addition, the declaration of Vanessa Brinkman in the *EPIC* matter describes the burden under which OIP is operating and the hundreds of requests seeking information related to the Mueller investigation. *See* Brinkmann Decl., *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 5, 2019), Dkt. 19-1.

B. With the extra ten working days to which the Department is entitled, the time to issue a determination is not until May 2.[6] Thus, Plaintiffs cannot possibly establish that Defendants have failed on the merits to meet any statutory processing deadline, even for expedited processing, which requires processing "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

Second, even if the time period had run for the Department to issue a determination on Mr. Leopold's FOIA request, the consequence for a violation of a processing timeline is that Plaintiffs are entitled to file suit in district court, and their suit is not barred by a defense that the Plaintiffs have not exhausted administrative remedies. *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW*") ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."). Indeed, "nothing in the FOIA statute establishes that an agency's failure to comply with this 20–day deadline automatically results in the agency's having to produce the requested documents without continued processing, as [Plaintiffs] suggest[]." *Elec. Info. Privacy Ctr.*, 15 F. Supp. 3d at 40; *see also Daily Caller*, 152 F. Supp. 3d at 10 ("FOIA does not require production of all responsive, non-exempt documents within twenty days of receiving a request."). Instead, if an agency "need[s] more time to respond to a particularly burdensome request," "the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *CREW*, 711 F.3d at 189 (citing 5 U.S.C. § 552(a)(6)(C)).

---

[6] "To be clear, a 'determination' does not require actual *production* of the records to the records at the exact same time that the 'determination' is communicated to the requestor. Under the statutory scheme, a distinction exists between a 'determination' and subsequent production." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

Third, Plaintiffs' reliance on *Electronic Privacy Information Center v. Department of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) ("*EPIC I*"), to argue that an agency's failure to process a FOIA request within 20 days constitutes a *per se* violation of the law that entitles the requester to get the requested records immediately, is wholly misguided.[7] "[T]he judge in *EPIC I* did not have the benefit of the D.C. Circuit's decision in *CREW*, and in particular, its holding regarding the specific consequences that attach to an agency's failure to meet the 20–day timeframe." *Elec. Info. Privacy Ctr.*, 15 F. Supp. 3d at 42. Moreover, the "judge in *EPIC I* relied on a 'presumption of agency delay' that the judge believed had arisen simply and solely because DOJ had failed to respond to EPIC's expedited FOIA request within 20 days" and "DOJ had not presented any evidence regarding the impracticability of such a rapid response to the *EPIC I* court."[8] *Id.*; *see also Daily Caller*, 152 F. Supp. 3d at 11 (finding that the *EPIC I* "court's holding rested heavily on the agency's failure to offer any evidence that such disclosure was impracticable").

Here, the Attorney General has set forth the process the Department is undertaking to prepare the nearly 400-page report for release. *See, e.g.*, Ex. 1, Ex. 2. And the Department's declarant, Vanessa Brinkmann, has explained that "it is not practicable for the Department to process the report for release to Plaintiff[s] in response to Plaintiff[s'] FOIA request any earlier than the timeframe the Attorney General has already provided" because after the report is released

---

[7] Plaintiffs also rely on the "DOJ FOIA Guide" for this proposition. *See* Pls.' Mot. 2. But that guide merely summarizes the holding of *EPIC I* and does not provide any independent support for Plaintiffs' argument. *See Procedural Requirements* 39, Dep't of Justice Guide to the Freedom of Information Act, *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/procedural-requirements.pdf (last visited Apr. 12, 2019).

[8] Notably, the *EPIC I* Court later modified its processing deadline based on classified affidavits that DOJ submitted regarding its processing capacity. *See EPIC I*, No. 06–cv–96, Order, ECF No. 18 (Mar. 24, 2006) (extending certain processing deadlines and ordering that *Vaughn* indices need not be created at that time); *see also Protect Democracy Project v. Dep't of Defense*, 263 F. Supp. 3d 293, 302 n.7 (D.D.C. 2017) (recognizing that the *EPIC I* Court later reconsidered its order allowing defendants additional time for processing).

by the Attorney General, the Department will need to undergo a review of the report for disclosure under the FOIA. Brinkmann Decl. ¶ 31, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 5, 2019), Dkt. 19-1. Thus, even if a presumption of delay exists, no such presumption even arguably arises on the facts of the instant case.

Accordingly, because Plaintiffs cannot show a likelihood of success on the merits—indeed, to the contrary—their motion for a preliminary injunction should be denied. *See Daily Caller*, 152 F. Supp. 3d at 10 ("The plaintiff's request for an order requiring the agency to complete production of all records responsive to its various FOIA requests within twenty days therefore finds no support in either the statute or binding precedent, significantly undermining the plaintiff's contention that it is likely to prevail in its effort in the Complaint to obtain such relief.").

### C. The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction

For all the reasons set forth at length in the government's opposition to EPIC's motion for preliminary injunction, the relief Plaintiffs seek is not in the public interest and would harm nonlitigants, and for these reasons as well, Plaintiffs' motion should be denied. *See* Def.'s Opp. 25–29, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 19-cv-810 (D.D.C. Apr. 5, 2019), Dkt. 19.

The Attorney General's March 29 letter indicated that he anticipates release of the report by mid-April and he testified that the report will be color coded with explanatory notes describing the basis for each redaction. The public interest is best served by permitting the expeditious processing and release of that report, without diverting resources with unnecessary and unjustified litigation.

### III. The Court Should Vacate the Hearing on Plaintiffs' Motion

The Court set a hearing on Plaintiffs' motion for April 16. Pursuant to Local Rule 65.1(d), a hearing on a motion for a preliminary injunction is not necessary if the "Court earlier decides the

motion on the papers." Indeed, this Court has recognized that "[a] court may deny a plaintiff's application for a . . . preliminary injunction without first providing a hearing on the merits when the record is sufficient to demonstrate a lack of right to relief." *Nat'l Propane Gas Ass'n v. U.S. Dep't of Homeland Sec.*, 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (quoting *Smith v. Harvey*, No. 06–1117(RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006)).  Because Plaintiffs raise the same arguments as EPIC—particularly with respect to irreparable harm, which was the basis of the Court's order denying EPIC's motion for a preliminary injunction—the Court should vacate the hearing and deny Plaintiffs' motion on the papers.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction, vacate the hearing set for April 16, consolidate this case with *Electronic Information Privacy Center v. Department of Justice*, No. 19-810, and order Plaintiffs to appear at the status conference on May 2, 2019, to discuss how the parties wish to proceed in this case.

Dated: April 12, 2019                    Respectfully submitted,

                                         JOSEPH H. HUNT
                                         Assistant Attorney General
                                         Civil Division

                                         ELIZABETH J. SHAPIRO
                                         Deputy Director
                                         Federal Programs Branch

                                         */s/ Courtney D. Enlow*
                                         COURTNEY D. ENLOW
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Room 12102
                                         Washington, D.C. 20005
                                         Tel: (202) 616-8467

Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

                        */s/ Courtney D. Enlow*
                        COURTNEY D. ENLOW
                        Trial Attorney
                        United States Department of Justice
                        Civil Division, Federal Programs Branch
                        1100 L Street, N.W.
                        Room 12102
                        Washington, D.C. 20005
                        Tel: (202) 616-8467
                        Email: courtney.d.enlow@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD, BUZZFEED, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 19-cv-957 (RBW) |
| | ) |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion to Vacate Hearing and for the reasons set forth therein, it is ORDERED that the hearing set for April 16, 2019, at 2:00 p.m. is VACATED, and the Court will decide Plaintiffs' Motion for a Preliminary Injunction on the papers.

Dated: _____    _____
                                                     THE HONORABLE REGGIE B. WALTON
                                                     UNITED STATES DISTRICT JUDGE

## **INDEX TO EXHIBITS**

Letter from Attorney General, dated March 29, 2019……………………………Exhibit 1

Letter from Attorney General, dated March 22, 2019……………………………Exhibit 2

# Exhibit 1

Letter from the Attorney General,

dated March 29, 2019



# The Attorney General
Washington, D.C.

March 29, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

Dear Chairman Graham and Chairman Nadler,

    I write in response to Chairman Nadler's March 25, 2019 letter and Chairman Graham's March 27, 2019 letter, which addressed the investigation of Special Counsel Robert S. Mueller, III and the "confidential report" he has submitted to me pursuant to 28 C.F.R. § 600.8(c).

    As we have discussed, I share your desire to ensure that Congress and the public have the opportunity to read the Special Counsel's report. We are preparing the report for release, making the redactions that are required. The Special Counsel is assisting us in this process. Specifically, we are well along in the process of identifying and redacting the following: (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public; (2) material the intelligence community identifies as potentially compromising sensitive sources and methods; (3) material that could affect other ongoing matters, including those that the Special Counsel has referred to other Department offices; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties. Our progress is such that I anticipate we will be in a position to release the report by mid-April, if not sooner. Although the President would have the right to assert privilege over certain parts of the report, he has stated publicly that he intends to defer to me and, accordingly, there are no plans to submit the report to the White House for a privilege review.

    Also, I am aware of some media reports and other public statements mischaracterizing my March 24, 2019 supplemental notification as a "summary" of the Special Counsel's investigation and report. For example, Chairman Nadler's March 25 letter refers to my supplemental notification as a "four-page summary of the Special Counsel's review." My March 24 letter was not, and did not purport to be, an exhaustive recounting of the Special Counsel's investigation or

1

report. As my letter made clear, my notification to Congress and the public provided, pending release of the report, a summary of its "principal conclusions"—that is, its bottom line. The Special Counsel's report is nearly 400 pages long (exclusive of tables and appendices) and sets forth the Special Counsel's findings, his analysis, and the reasons for his conclusions. Everyone will soon be able to read it on their own. I do not believe it would be in the public's interest for me to attempt to summarize the full report or to release it in serial or piecemeal fashion.

As I have discussed with both of you, I believe it would be appropriate for me to testify publicly on behalf of the Department shortly after the Special Counsel's report is made public. I am currently available to testify before the Senate Judiciary Committee on May 1, 2019 and before the House Judiciary Committee on May 2, 2019.

* * *

Finally, in the interests of keeping the public informed as to these matters, I intend to make this letter public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

cc:   Ranking Member Dianne Feinstein; Ranking Member Doug Collins

# Exhibit 2

Letter from the Attorney General,

dated March 22, 2019



# The Attorney General
Washington, D.C.

March 22, 2019

| | |
|---|---|
| The Honorable Lindsey Graham<br>Chairman, Committee on the Judiciary<br>United States Senate<br>290 Russell Senate Office Building<br>Washington, D.C. 20510 | The Honorable Jerrold Nadler<br>Chairman, Committee on the Judiciary<br>United States House of Representatives<br>2132 Rayburn House Office Building<br>Washington, D.C. 20515 |
| The Honorable Dianne Feinstein<br>Ranking Member, Committee on the Judiciary<br>United States Senate<br>331 Hart Senate Office Building<br>Washington, D.C. 20510 | The Honorable Doug Collins<br>Ranking Member, Committee on the Judiciary<br>United States House of Representatives<br>1504 Longworth House Office Building<br>Washington, D.C. 20515 |

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

I write to notify you pursuant to 28 C.F.R. § 600.9(a)(3) that Special Counsel Robert S. Mueller III has concluded his investigation of Russian interference in the 2016 election and related matters. In addition to this notification, the Special Counsel regulations require that I provide you with "a description and explanation of instances (if any) in which the Attorney General" or acting Attorney General "concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.9(a)(3). There were no such instances during the Special Counsel's investigation.

The Special Counsel has submitted to me today a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). I am reviewing the report and anticipate that I may be in a position to advise you of the Special Counsel's principal conclusions as soon as this weekend.

Separately, I intend to consult with Deputy Attorney General Rosenstein and Special Counsel Mueller to determine what other information from the report can be released to Congress and the public consistent with the law, including the Special Counsel regulations, and the Department's long-standing practices and policies. I remain committed to as much transparency as possible, and I will keep you informed as to the status of my review.

Finally, the Special Counsel regulations provide that "the Attorney General may determine that public release of" this notification "would be in the public interest." 28 C.F.R. § 600.9(c). I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General