## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY
INFORMATION CENTER,

     Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 19-cv-810 (RBW)

JASON LEOPOLD, BUZZFEED, INC.,

     Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 19-cv-957 (RBW)

## MOTION OF CITIZENS FOR RESPONSIBILITY AND ETHICS
## IN WASHINGTON FOR LEAVE TO FILE A BRIEF AS *AMICUS CURIAE*

Pursuant to Local Rule 7(o) of the Local Civil Rules of the United States District Court

for the District of Columbia (the "Local Rules," and each rule therein, a "Local Rule"), Citizens

for Responsibility and Ethics in Washington ("CREW") respectfully moves the Court for leave

to file a memorandum of points an authorities as *amicus curiae* in opposition to the Department

of Justice's motion for summary judgment and in support of Plaintiffs' motions for summary

judgment. In support of its motion, CREW states as follows:

1.      Proposed *amicus* CREW is a nonprofit, nonpartisan corporation organized under

section 501(c)(3) of the Internal Revenue Code.  Through a combined approach of research,

advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials. CREW frequently files and litigates Freedom of Information Act ("FOIA") requests, including requests for records relating to criminal and civil investigations.

2.      CREW has engaged in public education concerning the Special Counsel regulations as well as the issues that Special Counsel Robert Mueller investigated.[1]

3.      The attached proposed *amicus* brief offers a perspective offered by neither party regarding the application of the deliberative process privilege to the Report. To determining whether portions of the Report are predecisional or deliberative and therefore subject to withholding under Exemption 5 of the FOIA and the deliberative process privilege, the Court must consider the authority that Acting Attorney General Rosenstein delegated to the Special Counsel, the Special Counsel regulations, and the relationship between the Report and the decisions reached by the Special Counsel.

4.      The court has "broad discretion" to permit CREW's participation in this suit as *amicus curiae*. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007).

5.      CREW's participation in this matter as an *amicus curiae* would not unduly delay the Court's ability to rule on the parties' cross motions from summary judgment. Pursuant to this

---

[1] *See, e.g.*, Noah Bookbinder, Norman Eisen, and Caroline Fredrickson, Why Trump Can't (Easily) Remove Mueller—and What Happens If He Tries, *American Constitution Society & CREW* (Dec. 6, 2017), *available at* https://s3.amazonaws.com/storage.citizensforethics.org/wp-content/uploads/2017/12/06181615/Why-Trump-Cant-Easily-Remove-Mueller%E2%80%94and-What-Happens-If-He-Tries-12.6.17.pdf; Barry H. Berke, Noah Bookbinder, and Norman Eisen, Presidential Obstruction of Justice: The Case of Donald J. Trump, *Brookings* (Aug 22, 2018), *available at* https://www.brookings.edu/research/presidential-obstruction-of-justice-the-case-of-donald-j-trump-2nd-edition/.

Court's scheduling order, the parties' briefing of this matter will not be complete until July 15, 2019 and a hearing on the cross motions is schedule for August 5, 2019. <u>Order</u>, ECF No. 43 (May 3, 2019).

6.      Counsel for CREW has contacted counsel for the parties to determine whether they would consent to the filing of the attached brief. Counsel for the Department of Justice objected.

WHEREFORE, leave to file the attached *amicus curiae* brief should be granted. A proposed order is attached to this motion.

June 28, 2019                                                  Respectfully Submitted,

<u>/s/ Conor M. Shaw</u>
Conor M. Shaw
(D.C. Bar No. 1032074)
<u>cshaw@citizensforethics.org</u>
Anne L. Weismann
(D.C. Bar No. 298190)
aweismann@citizensforethics.org
Citizens for Responsibility and Ethics
in Washington
1101 K St. NW, Suite 201
Washington, D.C. 20005
T: (202) 408-5565
F: (202) 588-5020

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY
INFORMATION CENTER,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 19-cv-810 (RBW)

JASON LEOPOLD, BUZZFEED, INC.,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 19-cv-957 (RBW)

**BRIEF OF CITIZENS FOR RESPONSIBILITY AND ETHICS
IN WASHINGTON AS *AMICUS CURIAE* IN SUPPORT OF
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

CONOR M. SHAW
cshaw@citizensforethics.org
(D.C. Bar No. 1032074)
ANNE L. WEISMANN
aweismann@citizensforethics.org
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics
in Washington
1101 K St. NW, Suite 201
Washington, D.C. 20005
T: (202) 408-5565
F: (202) 588-5020

Counsel for *Amicus*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

INTEREST OF *AMICUS*............................................................................................ v

CORPORATE DISCLOSURE STATEMENT ........................................................... v

ARGUMENT ............................................................................................................... 1

  I. The Report Explains Final Prosecution and Declination Decisions Made by the
     Special Counsel.................................................................................................. 2

    A. Acting Attorney General Rod Rosenstein's order appointing Special Counsel
       Robert Mueller gave him authority to make final prosecutorial decisions........................ 2

    B. Special Counsel Mueller submitted a report pursuant to 28 C.F.R. § 600.8(c)
       at the conclusion of his investigation explaining the prosecution or declination
       decisions that the Special Counsel had previously reached.................................................. 4

    C. The Attorney General did not invoke 28 C.F.R. § 600.9(a)(3) to overrule any
       of the investigative, prosecution, or declination decisions made by the Special
       Counsel. ................................................................................................................... 6

  II. Because the Report Issued by the Special Counsel Contains His Final Decisions
     It Is Not Subject to the Deliberative Process Privilege........................................... 7

    A. The deliberative process privilege only applies to documents that are
       pre-decisional and deliberative. ........................................................................... 7

    B. The Report is not predecisional because it was finalized and submitted *after*
       the prosecution and declination decisions the Report explains. ....................... 8

    C. The Report's explanations of prosecution and declination decisions are not
       deliberative…......................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93 (D.D.C. 2010) .. 10

*Blakeney v. FBI*, No. 17-CV-2288 (BAH), 2019 WL 450678 (D.D.C. Feb. 5, 2019) ................ 10

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)................................ 13

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............. 7, 8, 14, 16

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ...................................................... 13

*Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14 (D.D.C. 2012) .......... 10

*Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1 (D.D.C. 2000)............................ 10, 12, 15

*In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018)............................................ 4

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)...................................................................... 7

*Jackson v. U.S. Attorneys Office, Dist. of N.J.*, 293 F. Supp. 2d 34 (D.D.C. 2003) .................... 10

*Jimenez v. FBI*, 938 F. Supp. 21 (D.D.C. 1996) ........................................................................ 11

*N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)............................................ 8, 9, 10, 11

*Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6 (D.D.C. 2012) ...................... 10

*United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598 (D.D.C. 2018), *appeal dismissed*, No. 18-3061, 2018 WL 5115521 (D.C. Cir. Sept. 17, 2018) ................................... 4

*United States v. Internet Research Agency*, No. 18-cr-32 (D.D.C. Feb. 16, 2018) ....................... 4

*United States v. Manafort*, 312 F. Supp. 3d 60 (D.D.C. 2018)...................................................... 4

*United States v. Manafort*, 321 F. Supp. 3d 640 (E.D. Va. 2018) ................................................ 4

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975)................................................................ 15, 16

*Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768 (D.C. Cir. 1988)................................... 8

**Statutes**

28 U.S.C. § 509......................................................................................................................... 2, 12

28 U.S.C. § 510......................................................................................................................... 2, 12

28 U.S.C. § 515............................................................................................................................. 12

28 U.S.C. § 515(a) .......................................................................................................................... 2

5 U.S.C. § 552(b)(5) ....................................................................................................................... 7

**Regulations**

28 C.F.R § 600.6 .............................................................................................................................. 3

28 C.F.R § 600.7(b) .................................................................................................................... 3, 14

28 C.F.R § 600.8(c).......................................................................................................................... 4

28 C.F.R § 600.9(a)(3)............................................................................................................. 4, 6, 7

28 C.F.R §§ 600.4-600.10........................................................................................................... 3, 12

## INTEREST OF *AMICUS*

*Amicus* Citizens for Responsibility and Ethics in Washington ("CREW") is a nonprofit, nonpartisan corporation organized under section 501(c)(3) of the Internal Revenue Code. Through a combined approach of research, advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials. CREW frequently files and litigates FOIA requests, including requests for records relating to criminal and civil investigations. CREW has also sought to educate the public about the special counsel regulations as well as the issues that Special Counsel Robert Mueller investigated.

Pursuant to Local Rule 7(o), *amicus* affirms that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than amicus or its counsel contributed money that was intended to fund preparing or submitting this brief.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7(o), *amicus* Citizens for Responsibility and Ethics in Washington certifies that no publicly held corporation has a 10 percent or greater ownership interest in it.

**ARGUMENT**

This case presents issues that go to the heart of our democracy and whether we as a nation will hold the President accountable for his actions. Following a years-long investigation, Special Counsel Robert Mueller issued his <u>Report On The Investigation Into Russian Interference In the 2016 Presidential Election</u> ("Report"), summarizing his team's findings concerning the sufficiency of the evidence as to whether President Donald Trump and his campaign colluded with a hostile foreign nation to interfere in the 2016 presidential election, whether the President obstructed justice, and the extent to which the election was compromised by the actions of foreign actors. While the Department of Justice ("DOJ") made much of this report public, it withheld critical portions under claims of exemption pursuant to the Freedom of Information Act ("FOIA").

CREW files this *amicus* brief to address one of those exemption claims: DOJ's assertion of Exemption 5 and the deliberative process privilege over portions of the Report.[1] A valid assertion of the deliberative process privilege requires that the record in question be both predecisional and deliberative. The Report is neither—it is a document that DOJ regulations compelled the Special Counsel to submit at the *conclusion* of his investigation to explain prosecution and declination decisions he *already had made*.

 DOJ's assertion of Exemption 5 to withhold portions of the Report is fundamentally at odds with the order appointing Special Counsel Mueller, which empowered him to "prosecute federal crimes" arising from his investigation; implementing regulations, which vest the Special Counsel with "the full power and independent authority to exercise all investigative and

---

[1] While CREW's brief addresses only DOJ's reliance on the deliberative process privilege to withhold information pursuant to Exemption 5, CREW does not concede that the government's other withholdings are valid.

prosecutorial functions of any United States Attorney; and the context and contents of the

Report, which unambiguously demonstrate its purpose was to record and explain the Special

Counsel's investigative and prosecutorial decisions, rather than to state a preliminary or advisory

opinion.

Finally, even though the Special Counsel regulations grant the Attorney General authority

to "request that the Special Counsel provide an explanation for any investigative or procedural

step, and may after review conclude that the action is so inappropriate or unwarranted under

established Departmental practices that it should not be pursued," Attorney General William

Barr stated there were no instances in which he or any acting Attorney General overruled the

Special Counsel. Accordingly, to the extent the Report was ever in fact predecisional or

deliberative, it lost that status when Attorney General Barr accepted its findings and rationale.

I.      **The Report Explains Final Prosecution and Declination Decisions Made by the
        Special Counsel.**

        A.      **Acting Attorney General Rod Rosenstein's order appointing Special Counsel
                Robert Mueller gave him authority to make final prosecutorial decisions.**

The Attorney General of the United States is vested with broad authority under 28 U.S.C.

§ 509 and may delegate that authority to "any other officer, employee, or agency of the

Department of Justice." 28 U.S.C. § 510. This includes directing "an attorney specially appointed

by the Attorney General" to "conduct any kind of legal proceeding, civil or criminal . . . ." *Id.* §

515(a).

Pursuant to these authorities, Acting Attorney General Rod Rosenstein[2] appointed Robert

Mueller as Special Counsel on May 17, 2017, and authorized him to conduct an investigation of

---

[2] Deputy Attorney General Rosenstein served as acting attorney general in this matter due to the
recusal of Attorney General Sessions "from any existing or future investigations of any matters
related in any way to the campaigns for President of the United States." Attorney General

the "Russian government's efforts to interfere in the 2016 election" including "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." DOJ Mot. for SJ, ECF No. 54, Ex. 3. Acting Attorney General Rosenstein's order authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters." *Id.*

His order also stated that some of DOJ's special counsel regulations, 28 C.F.R §§ 600.4-600.10, applied to Special Counsel Mueller. These regulations lay out the Special Counsel's authority and relationship with the Attorney General in greater detail. Specifically,

> [s]ubject to the limitations in the following paragraphs, the Special Counsel *shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney*. Except as provided in this part, the Special Counsel shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities.

*Id.* § 600.6 (emphasis added). In addition, the regulations provide that the Special Counsel "shall not be subject to the day-to-day supervision of any official of the Department." *Id.* § 600.7(b). Instead, the Attorney General "may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id.* Upon conclusion of the investigation, the Attorney General must provide the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress with "a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted

---

Sessions Statement on Recusal, *Dep't. of Justice Office of Public Affairs*, Mar. 2, 2017, *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

under established Departmental practices that it should not be pursued." *Id.* § 600.9(a)(3).

Finally, the regulations provide that "[a]t the conclusion of the Special Counsel's work, he or she

shall provide the Attorney General with a confidential report explaining the prosecution or

declination decisions reached by the Special Counsel." *Id.* § 600.8(c).

As these regulations make clear, Special Counsel Mueller had the authority to make final

prosecutorial decisions. Challenges to his exercise of that authority have been rejected by every

court to hear them. *See In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 624 (D.D.C. 2018),

*aff'd*, 916 F.3d 1047 (D.C. Cir. 2019); *United States v. Concord Mgmt. & Consulting LLC*, 317

F. Supp. 3d 598, 606 (D.D.C. 2018), *appeal dismissed*, No. 18-3061, 2018 WL 5115521 (D.C.

Cir. Sept. 17, 2018); *United States v. Manafort*, 321 F. Supp. 3d 640, 653 (E.D. Va. 2018);

*United States v. Manafort*, 312 F. Supp. 3d 60, 79 (D.D.C. 2018).

> **B.**     **Special Counsel Mueller submitted a report pursuant to 28 C.F.R. § 600.8(c) at the conclusion of his investigation explaining the prosecution or declination decisions that the Special Counsel had previously reached.**

On March 22, 2019, Special Counsel Mueller submitted his Report to Attorney General

Barr "explaining the prosecution or declination decisions [the Special Counsel] reached." Report,

Vol. I, at 1 (quoting 28 C.F.R. § 600.8(c)). The Report explains that the Special Counsel charged

two sets of Russian individuals and/or entities with criminal violations in conjunction with

"Russia's two principal interference operations in the 2016 Presidential Election—the social

media campaign and the hacking-and-dumping operations." Report, Vol. I, at 9.[3] The Special

Counsel also disclosed that "while the investigation identified numerous links between

---

[3] *See also* Indictment, *United States v. Netyksho*, No. 18-cr-215 (D.D.C. Jul. 13, 2018), *available at* https://www.justice.gov/file/1080281/download; Indictment, *United States v. Internet Research Agency*, No. 18-cr-32 (D.D.C. Feb. 16, 2018), *available at* https://www.justice.gov/file/1035477/download.

individuals with ties to the Russian government and individuals associated with the Trump Campaign, the evidence was not sufficient to support criminal charges." <u>Report Vol. I</u>, at 9. The Special Counsel's Office explained that it had charged several individuals affiliated with the Trump Campaign with false statements for lying "to the Office, and to Congress, about their interactions with Russian-affiliated individuals and related matters." *Id.*[4]

The Report contains at least two references to separate memoranda produced to the Acting Attorney General before the Special Counsel sought indictments in conjunction with its investigation. When the Report discusses the Special Counsel's decision to file charges against 13 Russian nationals and three Russian entities in conjunction with the Russian "Active Measures" Social Media Campaign on February 16, 2018, the Report discloses that "[a] more detailed explanation of the charging decision in this case is set forth in a separate memorandum provided to the Acting Attorney General before the indictment." <u>Report, Vol. I</u>, at 174 n.1276. Similarly, when discussing the Special Counsel's decision to file charges against Russian military intelligence officers in conjunction with Russian Hacking and Dumping Operations, the Report discloses that "[t]he Office provided a more detailed explanation of the charging decision in this case in

---

[4] *See also* <u>Indictment</u>, *United States v. Stone*, No. 19-cr-18 (D.D.C. Jan. 24, 2019), *available at* https://www.justice.gov/file/1124706/download; <u>Information</u>, *United States v. Cohen*, No. 18-cr-850 (S.D.N.Y. Nov. 29, 2018), *available at* https://www.justice.gov/file/1115596/download; <u>Superseding Criminal Information</u>, *United States v. Manafort*, No. 17-cr-201 (D.D.C. Sept. 14, 2018), *available at* https://www.justice.gov/file/1094141/download; <u>Superseding Indictment</u>, *United States v. Manafort*, No. 18-cr-83 (E.D. Va. Feb. 22, 2018) *available at* https://www.justice.gov/file/1038391/download; <u>Information</u>, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Nov. 30, 2017) *available at* https://www.justice.gov/file/1015026/download; <u>Information</u>, *United States v. Papadopoulos*, No. 17-cr-182 (D.D.C. Oct. 3, 2017), *available at* https://www.justice.gov/file/1007336/download.

meetings with the Office of the Acting Attorney General before the indictment." <u>Report, Vol. I</u>, at 175 n.1277. In addition, when the Report discusses the potential liability of Trump "Campaign-affiliated individuals under federal statutes regulating actions on behalf of, or work done for, a foreign government," it discloses that "[t]he evidence underlying those charges is not addressed in this report because it was discussed in public court documents and in a separate prosecution memorandum submitted to the Acting Attorney General before the original indictment in that case." <u>Report, Vol. I</u>, at 182-83.

On May 29, 2019, in his only public comments to date as Special Counsel, Mueller announced that his investigation was complete. In those comments, Special Counsel Mueller explained that his office "conducted an independent criminal investigation and reported the results to the attorney general, as required by department regulations."[5] He further explained that the Report "contains our findings and analysis and the reasons for the decisions we made."[6] Special Counsel Mueller emphasized that "[w]e chose those words carefully, and the work speaks for itself."[7]

**C.    The Attorney General did not invoke 28 C.F.R. § 600.9(a)(3) to overrule any of the investigative, prosecution, or declination decisions made by the Special Counsel.**

On March 22, 2019, Attorney General Barr informed the Chairs and Ranking Members of the Senate and House Judiciary Committees that Special Counsel Mueller had "concluded his investigation of Russian interference in the 2016 election and related matters." <u>DOJ Mot. for SJ</u>,

---

[5] <u>Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential Election</u>, *Dep't of Justice Office of Public Affairs* (May 29, 2019) (henceforth "Mueller Statement"), *available at* <u>https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-investigation-russian-interference</u>

[6] *Id.*

[7] *Id.*

Ex. 4. In so doing, Attorney General Barr also provided notice required by 28 C.F.R. §

600.9(a)(3) that there were "no . . . instances during the Special Counsel's investigation" in

which the Attorney General or Acting Attorney General "'concluded that a proposed action by a

Special Counsel was so inappropriate or unwarranted under established Departmental practices

that it should not be pursued.'" *Id.* (quoting § 600.9(a)(3)).

**II.   Because the Report Issued by the Special Counsel Contains His Final Decisions It Is
Not Subject to the Deliberative Process Privilege.**

    **A.   The deliberative process privilege only applies to documents that are pre-
decisional and deliberative.**

Exemption 5 of the FOIA applies only to "inter-agency or intra-agency memorandums or

letters that would not be available by law to a party other than an agency in litigation with the

agency . . . ." 5 U.S.C. § 552(b)(5). If a record passes the threshold test of being inter- or intra-

agency, it may not be withheld unless it is subject to a discovery privilege. Here, DOJ relies on

the deliberative process privilege to withhold critical portions of the Report that explain why the

Special Counsel reached some of his final decisions.

The deliberative process privilege has two prerequisites: the information sought to be

protected must be both predecisional and deliberative. A document is predecisional if "it was

generated before the adoption of an agency policy"; it is deliberative if it "reflects the give-and-

take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866

(D.C. Cir. 1980). As the D.C. Circuit explained in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir.

1997), "[t]he deliberative process privilege *does not shield documents that simply state or

explain a decision the government has already made* or protect material that is purely factual,

unless the material is so inextricably intertwined with the deliberative sections of documents that

its disclosure would inevitably reveal the government's deliberations." *Id.* at 737 (emphasis

added). In this way, the privilege differentiates between "recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"—which are covered by the privilege, *Coastal States Gas Corp.*, 617 F.2d at 866—and "documents which explain an agency's final decision," which must be disclosed. *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988). Indeed, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp.*, 617 F.2d at 866.

> **B.     The Report is not predecisional because it was finalized and submitted *after* the prosecution and declination decisions the Report explains.**

It is almost beyond question that the Report is not a pre-decisional document. The case law uniformly "draw[s] a distinction between *predecisional communications*, which are privileged, and *communications made after the decision and designed to explain it*, which are not." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52 (1975) (internal citations omitted) (emphasis added).  Submitted "'[a]t the conclusion of the Special Counsel's work . . . ,'" Report, Vol. II, at 1, the Report explains the investigative steps, factual findings, and prosecution and declination decisions that the Special Counsel had already made.

The timing of the Report's submission, the language the Report employs, and the Special Counsel's sole public statement about the Report all support the conclusion that it is not a predecisional document. The Special Counsel finalized his Report at the conclusion of his investigation, and after the Special Counsel's Office made its prosecutorial decisions.[8] And while the Special Counsel may have considered investigative and prosecutorial actions other than

---

[8] The final indictment obtained by the Special Counsel's Office was filed on January 24, 2019. *See* Indictment, *United States v. Stone*, No. 19-cr-18. The Report was submitted to Attorney General Barr on March 22, 2019. DOJ Mot. for SJ, Ex. 4.

the ones he took and legal arguments that did not make their way into the Report, the Report he issued represents the Special Counsel's final articulation of the facts that his investigation established, the conclusions he reached, and the decisions he made. That much is clear from the language the Special Counsel employed in the Report. The executive summary to Volume I states that the Report "describes the factual results of the Special Counsel's investigation . . . "; "describe[s] the principal ways Russia interfered in the 2016 presidential election"; "describes the links between the Russian government and individuals associated with the Trump Campaign"; and "sets forth the Special Counsel's charging decisions." Report, Vol. I, at 2-3. Special Counsel Mueller's only public statement mirrored this language. He stated that the Report "contains our findings and analysis, and the reasons for the decisions we made."[9] Indeed, he underscored the point by adding that "[w]e chose those words carefully and the work speaks for itself" and that "[t]he report is my testimony."[10] The Report is unmistakably Special Counsel Mueller's explanation of decisions that were made before the Report was finalized and submitted. It is not predecisional. *See Sears, Roebuck & Co.*, 421 U.S. at 151–52.

In these respects, the Report is distinguishable from memoranda and other documents that the Special Counsel's Office prepared while it was determining whether to pursue certain investigative and prosecutorial steps. As explained above in Section I.B, the Report discloses that in at least three instances, the Special Counsel consulted with the Acting Attorney General prior to finalizing prosecutorial decisions. In two cases, the Special Counsel's Office prepared memoranda formally recommending particular actions, Report, Vol. I, at 174 n.1276; *id.* at 182-83; in a third case, the Special Counsel's office briefed the Attorney General at meetings. *Id.* at

---

[9] Mueller Statement.
[10] *Id.*

175 n.1277. Memoranda prepared in advance of a decision to prosecute or not to prosecute are

clearly predecisional; the Report—a document that explains the Special Counsel's decisions at

the conclusion of his investigation—is not.

To muddy these crystal-clear waters, the Government attempts to conflate the question of

whether a *document* is "predecisional" into a question of whether it is deliberative—thereby

reducing the two-part test into one. *See* DOJ Br. at 47-48 ("The information is predecisional

because 'it explains the thought process and application of law to specific facts that was

considered by the Special Counsel prior to reaching decisions on the specific matters discussed

in the Report that resulted in criminal charges.'") (quoting DOJ Mot. for SJ, Ex. 1 (Brinkmann

Decl.) ¶ 30). This approach finds no support in the case law. *See Sears, Roebuck & Co.*, 421 U.S.

at 151–5; *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 113

(D.D.C. 2010). While the questions of whether a document is predecisional and whether it is

deliberative are related, they are not the same. A document describing considerations that the

agency took into account in the course of making a final decision might reflect deliberations, but

if it is part of the agency's final or after-the-fact explanation for a course of action, it is not

predecisional. All of the cases cited by the government are consistent with this fundamental

distinction. *See* DOJ Br. at 49-50.[11]

---

[11] *See Blakeney v. FBI*, No. 17-CV-2288 (BAH), 2019 WL 450678, at *4 (D.D.C. Feb. 5, 2019)
(applying the deliberative process privilege to "draft pleadings and email communications");
*Performance Coal Co. v. U.S. Dep't of Labor*, 847 F. Supp. 2d 6, 16 (D.D.C. 2012) (holding that
the documents were pre-decisional "because the discussions and review concerning whether a
miner will eventually be referred for prosecution or assessments is currently ongoing"); *Gov't
Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 25 (D.D.C. 2012) (accepting
the government's argument that "the documents in question, which were from 2006, were pre-
decisional in nature because they were created prior to the decision not to prosecute, which was
made on February 12, 2008"); *Jackson v. U.S. Attorneys Office, Dist. of N.J.*, 293 F. Supp. 2d 34,
40 (D.D.C. 2003) (holding that the deliberative process privilege applies to an Assistant United
States Attorney's notes about whether to charge an individual that were drafted during the course

Whether a document is predecisional is no mere technicality—it drives the Court's balancing of the fundamental interests underlying the FOIA that the Court must consider. As the Supreme Court has explained, the distinction between pre-decisional communications and post-decisional ones

> . . . is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of post-decisional communications, but also, in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted. The public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground. In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working law' of the agency and have been held by the lower courts to be outside the protection of Exemption 5.

*Sears, Roebuck & Co.*, 421 U.S. at 152–53. This is particularly true in the case of a Special Counsel investigation. The Government's interest in the integrity and confidentiality of the investigation is high when investigative and prosecutorial decisions are being made, but is significantly reduced once the Special Counsel has completed his work. The public interest in transparency moves in the opposite direction. Especially in the context of an investigation into interference with our electoral process by a foreign power and potential links to the sitting President's political campaign, the public interest in disclosure is at an apex once the investigation is complete and the prosecutorial decisions have been made.

---

of the investigation); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 10 (D.D.C. 2000) ("[A]ll documents prepared by the agency with regard to this prosecution prior to the final decision of Andrews to authorize the prosecution of Reverend Moon and Mr. Kamiyama would be considered predecisional and allowing release of these memoranda would violate the intent of the deliberative process privilege."); *Jimenez v. FBI*, 938 F. Supp. 21, 28 (D.D.C. 1996) ("To invoke the deliberative process exemption, the agency must show that the documents (1) precede final agency action on the matter addressed, and (2) make recommendations or express opinions on matters to be decided.").

Nevertheless, the Government insists that some portions of the Report are predecisional because even though the Special Counsel may have made final decisions with respect to the individuals his office investigated, DOJ theoretically could pursue prosecution of those individuals at some future date. *See* DOJ Br. at 51 ("[T]he information is predecisional because the decisions themselves are not final. Although the Special Counsel decided not to prosecute, 'the Department is not precluded from bringing such charges in the future, were evidence developed that supported the principles of federal prosecution governing the standards of initiating criminal prosecution.'") (quoting and citing Brinkmann Decl. ¶ 36). The Government's narrow understanding of what constitutes a final decision does not find support in the cases it cites. For instance, in *Heggestad,* the court found that a final prosecutorial decision was made by a subordinate DOJ official—the Acting Deputy Assistant Attorney General for the Tax Division. 182 F. Supp. 2d at 10. Based on that finding, the court held that documents prepared prior to the decision of that official "would be considered predecisional." *Id.* The possibility that the Acting Deputy Assistant Attorney General for the Tax Division theoretically could have been overruled down the line by some higher ranking official or a successor in his Division did not factor into the court's analysis of whether his decision was "final."

In this matter, the Acting Attorney General vested the Special Counsel with authority to make final prosecution and declination decisions, in accordance with federal law, 28 U.S.C. §§ 509, 510, 515, and DOJ's special counsel regulations, 28 C.F.R. §§ 600.4-600.10. *See* DOJ Mot. for SJ, Ex. 3; *see also* Section I.A, *supra*. As the Report and litigation documents created by the Special Counsel detail, acting pursuant to this authority the Special Counsel's Office made numerous prosecution and declination decisions during its two-year investigation. *See* Section

I.B (n.7), *supra*. The Special Counsel's prosecutorial judgments were final, and records created after the Special Counsel's Office reached a decision on a particular matter are not predecisional.

Accepting the Government's position that a document is predecisional if the agency seeking to withhold it might, at some future date, reverse its decision would fundamentally reshape the contours of the deliberative process privilege and undermine the public interests the FOIA seeks to advance. Matters delegated by Congress to agencies are rarely "final" as the Government employs the term because agencies can usually withdraw or reverse decisions, policies, and regulations. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 863 (1984) ("An initial agency interpretation is not instantly carved in stone."). Under the Government's logic, nearly any document describing agency action would be predecisional because it could be subject to revision at some future uncertain date.

Moreover, while individuals that Special Counsel Mueller declined to prosecute might technically be subject to prosecution until the applicable statutes of limitation expire, DOJ has made no factual representation that a reversal of course is anything more than a theoretical possibility. Even if the Court were to accept the Government's suggestion that at some future point one or more of the Special Counsel's judgments may be overturned and that it is the Attorney General's decision that is truly "final," the Attorney General's decision not to overrule the Special Counsel amounts to an adoption of his findings and decisions as DOJ policy.[12]

---

[12] Although Attorney General Barr did not overrule the Special Counsel, some of his public statements have been critical of the Special Counsel's investigation and findings with respect to the President's obstruction of justice in Volume II of the Report. For instance, in an interview with Jan Crawford on *CBS This Morning*, Attorney General Barr stated that he believed that Special Counsel Mueller "could've reached a decision as to whether [the President's obstruction] was

Indeed, the Special Counsel regulations explicitly authorize the Attorney General to request an explanation for any investigative or prosecutorial step proposed by the Special Counsel and to overrule the Special Counsel if the action was "so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.7(b). Attorney General Barr wrote in a public letter to Congress that there were no instances in which the Attorney General had so overruled Special Counsel Mueller. DOJ Br. Ex 4. The record in this case is therefore clear: the Attorney General could have overruled a prosecutorial decision by the Special Counsel, but he turned down that opportunity. Even if the Report were predecisional at the time it was prepared, it would have lost that status when Attorney General Barr adopted the Special Counsel's decisions as DOJ's "position" on the matters investigated and DOJ used them "in its dealings with the public." *Coastal States Gas Corp.*, 617 F.2d at 866.

### C.     The Report's explanations of prosecution and declination decisions are not deliberative.

The Mueller report is also not a deliberative document. It does not present recommendations or advisory opinions for the Attorney General to consider; rather, it explains the investigative steps, factual findings, and prosecutorial determinations that the Special Counsel reached during his two-year investigation. Because the Report does not "reflect[] the give-and-take of the consultative process," *Coastal States Gas Corp.*, 617 F.2d at 866, it is not subject to the deliberative process privilege and withholding pursuant to Exemption 5. *See also*

---

criminal activity[.]" William Barr interview: Read the full transcript, *CBS News*, May 31, 2019, *available at* https://www.cbsnews.com/news/william-barr-interview-full-transcript-cbs-this-morning-jan-crawford-exclusive-2019-05-31/. Citing DOJ's policy of not indicting a sitting president, the Report states that the Special Counsel "determined not to make a traditional prosecutorial judgment." Report, Vol. II, at 1. Since the government is only asserting Exemption 5 with respect to material withheld in Volume I of the Report, the Court need not consider whether Attorney General Barr has in fact adopted Volume II of the Report.

*Heggestad*, 182 F. Supp. at 7 ("[T]he document must be deliberative in nature, *i.e.*, it must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'") (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975)).

The text of the Report does not purport to reflect the give-and-take of the consultative process. As the Report explains on page 1 of Volume 1, the Report was "submitted pursuant to 28 C.F.R. § 600.8(c), which states that, '[a]t the conclusion of the Special Counsel's work, he . . . shall provide the Attorney General a confidential report explaining the prosecution or declination decisions [the Special Counsel] reached.'" Report, Vol. I, at 1. Section V of Volume I—which contains most of the Government's asserted Exemption 5 redactions—"provides detailed explanations of the Office's charging decisions . . . ." *Id.* at 9. The Report does not make recommendations, state advisory opinions, or reflect preliminary or personal views about a matter. To the contrary, the Report states and explains the Special Counsel's evidentiary findings, legal conclusions, and prosecutorial determinations.

The Government's description of the Report is impossible to square with the text of the Report itself. In its brief, DOJ suggests that the information in the Report "reflects the evolving decision-making processes of DOJ agents and attorneys leading up to the prosecution and declination decisions in the Report." DOJ Br. at 49. This assertion finds no support in the Report itself, which nowhere describes any evolving decision-making processes. Instead, the Report explains the final decisions the Special Counsel made and the Special Counsel's final articulation of the rationale for those decisions. *See, e.g.*, Report, Vol. I at 8-10, 174-99. The Government's description of the Report as a "'preliminary application of law to facts,'" DOJ Br. at 48 (quoting Brinkman Decl. ¶ 32), is untethered to reality. The Report states that it "embodies factual and legal determinations that the Office believes to be accurate and complete to the greatest extent

possible . . . ." Report, Vol. I at 2. Indeed, the Brinkmann Declaration describes at length the process by which the Special Counsel engaged in factual investigations and made prosecutorial decisions, Brinkmann Decl. ¶ 32, but conspicuously avoids *explaining how the Report was a direct part of those deliberative processes*. DOJ's description of the Report as "*reflect[ing]*" the Special Counsel decision-making process, DOJ Br. at 49, overlooks the critical fact that beyond merely reflecting that process, the Report explains and memorializes the outcome its final outcome. DOJ's words alone fail as a matter of law to transform the Report into a deliberative document. *Coastal States Gas Corp.*, 617 F.2d at 866; *Vaughn v. Rosen*, 523 F.2d at 1143–44.

The Report is therefore distinguishable from documents and meetings that were components of the deliberative process and that are referenced in the Report. *Id.* at 174 n.1276, 175 n.1277, 182-83. Memoranda and documentation of meetings where the Special Counsel discussed the merits of possible actions or recommended particular actions might be covered by the deliberative process privilege. But the Report—a document that was produced after those decisions were made and that advances the ultimate rationale adopted by the Special Counsel and the Department of Justice—is not.  Accordingly, the Court should reject the government's reliance on the deliberative process privilege and Exemption 5 to withhold documents.

## CONCLUSION

For the reasons explained above, *Amicus* CREW respectfully submits that the Court should grant Plaintiffs' motions for summary judgment with respect to Exemption 5.

June 28, 2019                                   Respectfully Submitted,

                                                /s/ Conor M. Shaw
                                                Conor M. Shaw
                                                (D.C. Bar No. 1032074)
                                                cshaw@citizensforethics.org
                                                Anne L. Weismann
                                                (D.C. Bar No. 298190)
                                                aweismann@citizensforethics.org
                                                Citizens for Responsibility and Ethics
                                                in Washington
                                                1101 K St. NW, Suite 201
                                                Washington, D.C. 20005
                                                T: (202) 408-5565
                                                F: (202) 588-5020

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, <br><br>      Plaintiff, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 19-cv-810 (RBW) |
| JASON LEOPOLD, BUZZFEED, INC., <br><br>      Plaintiff, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 19-cv-957 (RBW) |

## <u>ORDER</u>

Upon consideration of Citizens for Responsibility and Ethics in Washington ("CREW")'s

Motion for Leave to File Amicus Curiae Brief ("Motion"), it is hereby ordered that CREW's

Motion is granted; it is further ordered that the Amicus Curiae brief attached as Exhibit A to

CREW's Motion is deemed filed with this Court upon entry of this Order.

Entered this _____ day of _____, 2019

_____
Hon. Reggie B. Walton
U.S. District Court Judge

CO-386
10/2018

# United States District Court
# For the District of Columbia

ELECTRONIC PRIVACY
INFORMATION CENTER,                )
                                   )
                                   )
                                   )
                    Plaintiff      )          Civil Action No. 19-cv-810 (RBW)
            vs                     )
                                   )
UNITED STATES DEPARTMENT OF        )
JUSTICE                            )
                                   )
                                   )
                    Defendant      )

### CERTIFICATE RULE LCvR 26.1

I, the undersigned, counsel of record for  Citizens for Repsonsibility and Ethics In Washington (CREW)   certify that to the best of my knowledge and

belief, the following are parent companies, subsidiaries or affiliates of   CREW                        which  have

any outstanding securities in the hands of the public:

None.

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

Signature

D.C. Bar No. 1032074

BAR IDENTIFICATION NO.

Conor Shaw

Print Name

1101 K. St. NW, Suite 201

Address

Washington, D.C. 20002

City          State          Zip Code

(202) 408-5565

Phone Number